[L. A. No. 23105. In Bank. Oct. 15, 1954.]

Adoption of PATRICIA McDONALD, a Minor. EDNA M. JAMES, Respondent, v. HOLY FAMILY ADOPTION SERVICE, Appellant.

*Assigned by Chairman of Judicial Council.

Herman F. Selvin, Clock, Waestman & Clock, Loeb & Loeb and Edward W. Sheridan for Appellant.

Elsie M. Farris and Elizabeth Cochran for Respondent.

TRAYNOR, J.—The Holy Family Adoption Service (hereinafter called Holy Family), a licensed adoption agency, appeals from an order granting the petition of Mrs. Edna M. James to adopt an illegitimate child known as Patricia McDonald.

The natural mother of the child duly relinquished it for adoption to Holy Family pursuant to Civil Code, section 224m. Within three weeks after its birth Holy Family placed it with Mrs. James and her husband, who at that time signed an agreement to accept the child upon the conditions stated therein. Under the agreement the child was placed on a one-year probationary basis; any request for adoption had to be approved by an authorized officer of the agency; the agency placed the child with the intention and full expectation of leaving the child in the home; if after one year the agency was "fully satisfied with the care and training of the child, and character of the home" and approved a request therefor, adoption would be permitted; and the agency had "the right to remove the child previous to legal adoption if at any time the circumstances *made it necessary to do so.*" (Italics added.)

About eight months after the placement of the child, Mr. James committed suicide. Sometime thereafter the agency demanded that the child be returned to it for placement elsewhere. Mrs. James refused and filed the petition herein to adopt the child. Pursuant to section 226 of the Civil Code the Los Angeles County Bureau of Adoptions, the licensed county adoption agency, filed its report and recommendation that the petition be denied and the child returned to Holy Family on the ground that it was not legally free for adoption since Holy Family refused to consent thereto. Petitioner appealed to the court under section 226 of the Civil Code and the county agency and Holy Family were cited to appear and show cause why the child should not be declared free from their control.

The trial court concluded that the consent of Holy Family was not necessary and found on substantial evidence that it is for the best interests of the child that the petition be granted, that it would be injurious to the child to take it from Mrs. James at its present age and return it to institutional care and thereafter further placement, that the child is

suitable for adoption, that Mrs. James is a suitable and proper person to adopt the child, and that her home is a suitable home for the child.

The basic question on this appeal is whether the court could grant the adoption without the consent of Holy Family. ■ The answer to this question lies in the interpretation of the statutes governing adoptions in effect at the time the order herein was entered,* (Civ. Code, §§ 221, 224, 224m, 226) for the procedure for adoption, unknown at common law, is entirely statutory. (*Estate of Pierce*, 32 Cal.2d 265, 268 [196 P.2d 1]; *In re Santos*, 185 Cal. 127, 129 [195 P. 1055].) Appellant contends that under these sections a relinquished child cannot be adopted without the consent of the agency to which it has been relinquished for adoption.

Appellant concedes that there is no express provision in these sections requiring that consent, but contends that such a requirement is necessarily implied therein. We have concluded not only that no requirement of such consent can reasonably be implied from these sections but that the court is expressly empowered thereunder, if it deems the welfare of the child will be promoted by the adoption, to grant the petition without such consent. This conclusion is compelled by the plain language of these sections, as the following analysis thereof will make evident.

■ "Any minor child may be adopted by any adult person, in the cases and subject to the rules prescribed in this chapter." (Civ. Code, § 221.) The controlling rules are the "rules prescribed in this chapter," not the rules of any department or agency, public or private. Nowhere "in this chapter" can any provision be found that makes the consent of anyone other than a natural parent indispensable to the granting of an adoption.

■ A legitimate child cannot be adopted without the consent of its parents, if living (under certain circumstances not pertinent here, the mother alone may consent), and an illegitimate child cannot be adopted without the consent of its mother, if living, unless such father or mother (1) has been judicially deprived of custody of the child; (2) has deserted the child without provision for its identification; (3) has relinquished the child for adoption pursuant to Civil Code section 224m; or (4) has been declared by a court of competent juris-

*The 1953 amendments to these sections are not pertinent here and would not affect the result herein, even if they had been in effect at the time the order was entered.

diction to be feeble-minded or insane. (Civ. Code, § 224.)

█ Under this section the only consent required for the adoption of an illegitimate child is the consent of the mother, and her consent is not required when she has relinquished the child for adoption. Not only is there no provision in this section requiring any consent of the agency to which the child has been relinquished for adoption, but the Legislature in its 1953 session refused to enact an amendment thereto that "A child relinquished for adoption cannot be adopted without the consent of the agency to which the child has been relinquished."

If there is any implication in the statutes that the licensed agency to which a child has been relinquished for adoption must consent to the adoption, it must be found in Civil Code section 226, which sets forth the procedure by which an adoption can be accomplished. A careful examination of each paragraph thereof fails to disclose any such implication.

█ The first paragraph of that section provides:

"Any person desiring to adopt a child may for that purpose petition the superior court of the county in which the petitioner resides and the clerk of the court shall immediately notify the State Department of Social Welfare at Sacramento in writing of the pendency of the action and of any subsequent action taken."

Note that the right to petition does not except a relinquished child or any other child. Note further that the petition is to the *Superior Court* and not to the State Department of Social Welfare (hereinafter called the department), a licensed county agency, or any private agency licensed by the department.

█ This paragraph continues:

"In all cases in which consent is required, except in the case of an adoption by a stepparent where one natural or adoptive parent retains his or her custody and control of the child, unless an agency licensed by the State Department of Social Welfare to find homes for children and place children in homes for adoption joins in the petition for adoption, the consent of the natural parent or parents to the adoption by the petitioners must be signed in the presence of an agent of the State Department of Social Welfare or of a licensed county adoption agency on a form prescribed by such department and filed with the clerk of the superior court, in the county of the petitioner's residence."

The only consent to which this language can apply is parental consent, for the only purpose of this part of the paragraph is to prescribe the procedure by which parents may give their consent. It can only apply to children who have not been abandoned, relinquished, or taken from the custody of their parents, for parental consent is not required for the adoption of such children. It assumes that a petition may be filed for the adoption of a child who has not been relinquished but who has been placed for adoption by a licensed adoption agency by providing that if the agency joins in the petition, the consent of the natural parent need not be signed on the prescribed form in the presence of an agent of the department or county agency.

The second paragraph provides:

"Such consent, when reciting that the person giving it is entitled to the sole custody of the minor child, shall, when duly acknowledged before such agent, be prima facie evidence of the right of the person making it to the sole custody of the child and such person's sole right to consent."

"Such consent" as herein used refers to the parental consent mentioned in the first paragraph and does not apply to relinquished children for the same reasons that paragraph does not.

The third paragraph provides:

"In all cases of adoption in which no agency licensed to place children for adoption is a party, except in the case of an adoption by a stepparent where one natural or adoptive parent retains his or her custody and control of the said child, it shall be the duty of the Department of Social Welfare or of the licensed county adoption agency to accept the consent of the natural parents to the adoption of the child by the petitioners and to ascertain whether the child is a proper subject for adoption and whether the proposed home is suitable for the child, prior to filing report with the court."

The duty to ascertain whether the child is a proper subject for adoption, and the proposed home suitable, applies to all cases of adoption (except stepparent adoptions), including cases of abandoned or relinquished children. The only effect of the paragraph, when an agency licensed to place children for adoption is a party, is to relieve the department or the county agency of that duty. When such an agency is a party, it is assumed that it will take the place of the department or county agency and perform the duty delegated to it by the department of ascertaining whether the child is

a proper subject for adoption and the proposed home suitable for the child. (Welf. & Inst. Code, § 1620.)

■ The fourth paragraph provides:

"In all cases in which the consent of the natural parent or parents is not necessary and an agency licensed to place children for adoption is not a party to the petition, the State Department of Social Welfare or the licensed county adoption agency shall, prior to the hearing of the petition, file its consent to the adoption with the clerk of the superior court of the county in which the petition is filed. Such consent shall not be given by the Department of Social Welfare or the licensed county adoption agency unless the child's welfare will be promoted by the adoption."

The duty is here expressly placed on the department or the county agency to give or withhold consent when parental consent is not required and a licensed agency is not a party. There is no provision for giving or withholding consent by a licensed agency when it is a party. In the absence of such a provision it would appear that it has no authority under this paragraph to give or withhold consent. It might reasonably be contended, however, that just as it takes the place of the department or county agency with respect to the duties imposed under the third paragraph, it takes their place here and has the same power to give or withhold consent. But even if this contention were accepted, it cannot reasonably be assumed that the licensed agency (which is only licensed from year to year and may have its license revoked, Welf. & Inst. Code, §§ 1623, 1625) has greater power than the agencies whose place it takes (particularly the department, which licenses and regulates it) and that its consent to the adoption is indispensable even though, as will appear in our discussion of the eleventh paragraph, the consent of the department or county agency is not indispensable.

■ The fifth paragraph provides:

"Except in the case of the adoption of a child by a stepparent where one natural or adoptive parent retains his or her custody and control of the child, it shall be the duty of the Department of Social Welfare or of the licensed county adoption agency to submit to the court a full report of the facts disclosed by its inquiry [made under the third paragraph] with a recommendation regarding the granting of the petition within 180 days after the filing of the petition; provided, however, that the court may allow such additional time for the filing of said report as in its discretion it may see

fit. The report required of the Department of Social Welfare or of the licensed county adoption agency may be waived by the department in all cases in which an agency licensed by the Department of Social Welfare to place children in homes for adoption, is a party or joins in the petition for adoption. Such waiver may be issued by the department at any time, either before or after the filing of the petition for adoption.''

This paragraph, like the third, applies to all cases of adoption (except stepparent adoptions) including the adoption of abandoned or relinquished children. Here again, as in the third paragraph, if the report required by the department or the county agency is waived because a licensed agency is a party or joins in the petition, it is assumed that the licensed agency takes the place of the department or licensed county agency and will ascertain whether the child is a proper subject for adoption and the proposed home suitable for the child and present to the court the results of its inquiry and its recommendation. In the present case the report and recommendation required of the department or county agency was not waived, for the county agency filed a report and recommendation that the petition be denied.

The seventh* paragraph provides:

''If the findings of the State Department of Social Welfare or the county adoption agency are that the home of the petitioners is not suitable for the child and it recommends that the petition be denied, the county clerk upon receipt of the report of the State Department of Social Welfare or the county adoption agency shall immediately refer it to the superior court *for review*.'' (Italics added.)

This paragraph also applies to all adoption cases (except stepparent adoptions) and does not except cases of abandoned, relinquished, or other children. Note that the clerk must immediately refer an adverse report to the superior court *for review*. If the court were without power to grant an adoption without the consent of a licensed agency, as it is without such power when parental consent is required, no purpose would be served by a *review*—the report and recommendations would be immaterial whether or not they were

---

*The sixth paragraph merely provides that a copy of the report by the department or county agency must be given to the attorney for the petitioner or the petitioner. If a licensed agency is a party, it is assumed that through the pleadings and evidence the petitioner and his attorney will get the results of the agency's inquiry and the reasons for its conclusions.

reasonable, arbitrary or capricious, just as they would be immaterial if parental consent were required and it was refused. In the present case, following the adverse report of the county agency, the matter was referred for *review* in compliance with this paragraph and that agency and the Holy Family were cited to appear and show cause why the child should not be declared free from their control.

The eleventh† paragraph provides:

"If for a period of 180 days from the date of filing the petition, or upon the expiration of any extension of said period granted by the court, the Department of Social Welfare or the licensed county adoption agency fails or refuses to accept the consent of the natural parent or parents to the adoption, or if said department or agency fails or refuses to file or give its consent to an adoption in those cases where its consent is required by this chapter, either the natural parent or parents or the petitioner may appeal from such failure or refusal to the superior court of the county in which the petition is filed, in which event the clerk shall immediately notify the Department of Social Welfare of such appeal and the department or agency shall within 10 days file a report of its findings and the reasons for its failure or refusal to consent to the adoption or to accept the consent of the natural parent. After the filing of said findings, *the court may, if it deems that the welfare of the child will be promoted by said adoption,* allow the signing of the consent by the natural parent or parents in open court, or if the appeal be from the refusal of said department or agency to consent thereto, *grant the petition without such consent.*" (Italics added.)

In clear, precise language this paragraph places in the *Superior Court* the final decision as to whether or not an adoption shall be granted when the department or county agency refuses its consent. "The court may, if it deems the welfare of the child will be promoted by the adoption . . . grant the petition without such consent." In the present case the county agency filed its report and recommendation that the petition be denied and petitioner appealed. Under the plain language of the seventh paragraph the matter was before the court for review, and under the plain language of the eleventh paragraph the court had power to grant the adoption without the consent of such agency.

---

†The eighth, ninth, and tenth paragraphs are not pertinent here.

Although this paragraph speaks of an "appeal," there is no provision for any hearing before the department, the county agency, or any other agency and there is no reason to believe that the word "appeal" prescribes any further procedural steps when the matter is already before the court on the petition, or for review under the seventh paragraph. Nor can it reasonably be implied from this paragraph that since department or agency consent was not required because a licensed agency was a party, the court was without power to grant the petition without its consent. As we have shown above, no provision is made for consent by any public or private agency other than the department or county agency, and their refusal to consent is subject to review. If a requirement of consent by a licensed private agency can be implied at all when it is a party, it can only be because it takes the place of the department or county agency under the fourth paragraph; if it takes such place it is subject to the same limitations to which they are subject. Since the court can grant an adoption without the consent of the department or county agency, *a fortiori* it can do so without the consent of a licensed private agency.

*In re Kitchens,* 116 Cal.App.2d 254 [253 P.2d 690], on which appellant relies, reads into the statute matters that are not there and fails to give effect to express provisions that are there. It would divest the superior court of the jurisdiction and responsibility expressly given it by the statutes and is therefore. disapproved.

No distinction is made in the statutes as to procedure, consent, or power of the court, between adoptions of abandoned, relinquished, or other children when a licensed agency is a party. Nor is there anything therein that limits the right of a licensed agency to place children for adoption to those relinquished to it. In *Adoption of D.S.,* 107 Cal.App. 2d 211 [236 P.2d 821], in which the department refused its consent to the adoption of an abandoned child, it was held that under section 226 of the Civil Code the court exercises its independent judgment and can grant an adoption without the consent of the department. No one contends that the consent of a private agency licensed by the department would be indispensable in such a case, and there is no more reason for making it indispensable in the case of the adoption of a relinquished child.

Appellant contends that the agency to which a child is relinquished for adoption acquires through the relinquish-

ment all of the rights of a natural parent, including the right under section 224 to withhold consent to an adoption. Neither section 224, 224m, nor any other statute so provides. The only consent other than parental consent required by the statutes is that of the department or the county agency, which, as we have seen, is subject to review. The consent of these public agencies, or of a licensed private agency, cannot be equated with parental consent. ▮ The right of a natural parent to refuse consent is based on the natural affection between parent and child. As stated in *Matter of Cozza,* 163 Cal. 514, 523 [126 P. 161, Ann.Cas. 1914A 214], "the law, recognizing the natural and sacred rights of natural parents to their children, will permit [adoption] only with the consent of the parents. . . ." Manifestly the same "natural and sacred rights" are not present when a child has been relinquished to an agency for adoption. ▮ At most the agency acquires, subject to the authority and supervision of the department (Welf. & Inst. Code, §§ 1620, 1621), the legal custody of the child (see Civ. Code, § 224n, which was added to the code in 1953.) But that would not preclude adoption without its consent. In *In re Santos,* 185 Cal. 127 [195 P. 1055], the guardian had legal custody of the child, yet this court held that since there was no provision in the statutes requiring his consent and no reason to imply such a requirement, the trial court had power to grant the petition to adopt the child without his consent. ▮ "Wherever possible, such a construction should be given adoption laws as will sustain, rather than defeat, the object they have in view. (*Estate of McKeag,* 141 Cal. 403 [74 P. 1039, 99 Am.St.Rep. 80].) The main purpose of adoption statutes is the promotion of the welfare of childen, bereft of the benefits of the home and care of their real parents, by the legal recognition and regulation of the consummation of the closest conceivable counterpart of the relationship of parent and child. While a guardian of the person of a minor is charged with a high duty and serious responsibility in the care of his ward, nevertheless the status of guardian and ward falls short of the close approximation to the relationship of parent and child which is attainable through actual adoption culminating, as it does, in the child becoming a member, to all intents and purposes, of the family of the foster parents. The statutes in question should not, therefore, be construed so as to exclude an orphan in the custody of a guardian from the realiza-

tion of the peculiar advantages to be derived from an adoption unless such construction be unavoidable.

''While the code sections above mentioned do not expressly refer to such a situation as is here presented, they do, in effect, by the generality of their language, authorize an adoption in such a case. They provide that *any minor child* may be adopted by *any adult person,* in the cases and subject to the limitations set forth in the chapter. The 'cases' referred to are clearly these situations where the prescribed differences in ages exists and the requisite consent is obtainable. There is no attempt to limit the privilege of adoption according to the legal relationship of the minor and the person who has him in custody at the time of the adoption proceedings. In view of the fact that adoption is sanctioned where the parents of the child are living and not disqualified from exercising their parental rights, there can be no reason for implying a restriction merely because there is a duly appointed and qualified guardian.'' (185 Cal. at 130-131.) In *Ex parte Chambers,* 80 Cal. 216 [22 P. 138], on which appellant relies, the statute provided: ''The managers of the several orphan asylums in this state are hereby authorized and empowered to consent to the adoption of any orphan child, or child abandoned by its parents, *in the same manner that parents are by law authorized to consent to the adoption of their children.''* (Italics added.) No such provision can be found in the statutes of this state today.

Appellant contends, however, that unless the consent of the licensed agency is made a jurisdictional prerequisite to the adoption of a relinquished child, the statutory provisions (Civ. Code, §§ 224p, 224q; Welf. & Inst. Code, § 1629) vesting in licensed adoption agencies the exclusive function of placing children for adoption will be subverted. Those statutes were followed here. The child was placed with petitioner and her husband by a licensed adoption agency, and through the report of the county agency and the evidence presented by Holy Family the court had the benefit of their facilities, training, experience, and advice. Not only is there nothing in the statutes cited to indicate that the home-finding function given to licensed adoption agencies gives them and not the court the final decision as to whether or not an adoption is for the best interests of the child, but in section 226 of the Civil Code, the Legislature in clear and express language vested that power and responsibility in the superior court. Appellant also contends that petitioner is estopped

by the agreement she and her husband signed at the time the child was placed in their home. The agreement was prescribed by the regulations of the department, which is authorized to make regulations governing the placement of children by licensed agencies. (Welf. & Inst. Code, § 1621.) The department, however, has no power by regulation or otherwise to add to or detract from the rules for adoption prescribed in the Civil Code. (See discussion of Civ. Code § 221, *supra*; *Whitcomb Hotel, Inc.* v. *California Emp. Com.*, 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405].) Thus, neither appellant, the department, the county agency, nor any private agency had the right by regulation or by agreement to deprive petitioner of the right granted her by section 226 of the Civil Code to petition the court and have the court determine whether the petition should or should not be granted. If the department could give a licensed agency the right to control the adoption of a relinquished child, it could give such an agency the right to control the adoption of any child not subject to parental control. The statutory provisions governing adoptions cannot be so circumvented.

In a proceeding such as this the child is the real party in interest and is not a party to any agreement. It is the welfare of the child that controls, and any agreement others may have made for its custody is made subject to the court's independent judgment as to what is for the best interests of the child. (*Van der Vliet* v. *Van der Vliet*, 200 Cal. 721, 722 [254 P. 945]; *Anderson* v. *Anderson*, 56 Cal.App. 87, 89 [204 P. 426].)

The order is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.